UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CHARLES ALFRED WEATHERS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:04-CV-367 |
| | ) | (VARLAN/SHIRLEY) |
| BI-LO, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This civil action involves a variety of claims by ten current and former employees of Bi-Lo, LLC. The initial complaint was filed August 18, 2004, asserting claims against Bi-Lo and several individual Bi-Lo employees. The plaintiffs have amended their complaint twice, and Bi-Lo is the sole defendant named in the Second Amended Complaint [Doc. 43].

The case is before the Court on two pretrial motions: Defendant's Second Amended and Restated Motion to Dismiss [Doc. 48] and Defendant's Second Amended and Restated Motion to Sever [Doc. 49]. The Court has carefully considered the relevant pleadings [Docs. 48, 49, 54, 55, 56, 57] and the arguments of counsel presented on January 24, 2006.

For the reasons set forth herein, the motion to dismiss will be granted in part and denied in part and the motion to sever will be granted.

## I.  Summary of Facts

The Court will attempt to briefly set forth the basic facts alleged by the plaintiffs as set forth in the Second Amended Complaint [Doc. 43].

Plaintiff Charles Alfred Weathers was employed by Bi-Lo from 1976 through 2003. He asserts claims of defamation, retaliation, breach of contract, intentional infliction of emotional distress, and malicious harassment.  Weathers alleges that the defendant's employees were spreading rumors about his honesty and that a customer was told he had a mental condition.

Plaintiff Robert Eugene Majure has been employed by Bi-Lo from 2000 to the present.  He asserts claims of defamation, retaliation, intentional infliction of emotional distress, and malicious harassment.  Majure alleges that he was accused of having an affair with another employee and that management was spreading rumors that he was passing around a petition.

Plaintiff James Randall Mullinix has been employed by Bi-Lo from 1999 to the present.  He asserts claims of defamation, retaliation, intentional infliction of emotional distress, and malicious harassment.  Mullinix claims that he was the subject of various pranks and bathroom graffiti related to homosexuality.

Plaintiff Kenny Wayne Akers has been employed by Bi-Lo from 1998 to the present. He asserts claims of defamation, retaliation, intentional infliction of emotional distress, misrepresentation, and malicious harassment.  Akers claims that the defendant's employees spread rumors about his mental condition.

2

Plaintiff Pauline Tackett has been employed by Bi-Lo from 1991 to the present. She asserts claims of discrimination, defamation, retaliation, intentional infliction of emotional distress, and malicious harassment. Tackett alleges that her evaluation was completed outside of her presence and that she was subjected to disparaging remarks about store employees. She also claims that Bobby Michel attempted to grab her buttocks and repeated the story to many employees. She alleges that Mitch Kelly sprayed a mixture of bleach and comet in her locker and that her belongings were damaged as a result.

Plaintiff Sherry Denise Gossett was employed by Bi-Lo from 1997 through 2004. She asserts claims of defamation, discrimination, retaliation, intentional infliction of emotional distress, sexual assault, and malicious harassment. Gossett alleges that she was accused of manipulating the time clock and demoted. She also claims that she was sexually harassed by Bobby Michel and that a customer was told Gossett had been fired for stealing time from the company and sleeping with the managers and other male employees.

Plaintiff Elizabeth Crawford-Snyder has been employed by Bi-Lo from 1990 to the present. She asserts claims of defamation, discrimination, retaliation, assault, intentional infliction of emotional distress, and malicious harassment. Crawford-Snyder claims that she was not selected for a position of Deli Manager due to her race in favor of a less qualified employee. She also claims that she was discriminated against because males received lump sum payment increases and females did not. She claims she was assaulted by Rita Wilson and that she was subjected to various defamatory remarks.

3

Plaintiff Suzhen Yin has been employed by Bi-Lo from 2002 to the present. She asserts claims of discrimination, defamation, retaliation, intentional infliction of emotional distress, and malicious harassment. Yin alleges that Bobby Michel and Tim Evans made fun of the way she spoke because she is Chinese. She claims that management was rude and intimidating to her and she was forced to transfer stores. She also claims that she was accused of not doing her work correctly.

Plaintiff Lucretia A. Hicks was employed by Bi-Lo from 1998 through 2004. She asserts claims of discrimination, defamation, retaliation, fraudulent misrepresentation, intentional infliction of emotional distress, and malicious harassment. Hicks alleges that she was overlooked for promotion in favor of less qualified individuals and that her evaluation was completed without her.

Plaintiff Will Grayson Presnell has been employed by Bi-Lo from 1998 to the present. He asserts claims of defamation, retaliation, intentional infliction of emotional distress, and malicious harassment. Presnell claims that employees were spreading rumors about him and that he was the subject of defamatory remarks.

## II.    Motion to Dismiss

### A.    Standard of Review

Defendant has moved to dismiss the plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) should not be granted "unless it appears beyond a doubt that the plaintiff can

4

prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

With respect to defendant's 12(b)(1) motion, the Court considers the defendant's motion to be an attack on the factual basis for jurisdiction over plaintiffs' claims, rather than a facial attack on the claim of jurisdiction. *See Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). The plaintiffs have the burden of proving that the Court has subject matter jurisdiction. *Golden*, 410 F.3d at 881; *DLX*, 381 F.3d at 516. As provided in Fed. R. Civ. P. 12(h)(3), the Court must dismiss a claim where subject matter jurisdiction is lacking.

In light of the numerous plaintiffs and the types of claims asserted, the Court will address each type of claim asserted and identify the individual plaintiffs who have asserted such a claim. The Court notes at the outset that Bi-Lo has not moved to dismiss plaintiff

Weathers' breach of contract claim or the misrepresentation claims of plaintiffs Akers and Hicks.

B.    Discrimination

Plaintiffs Tackett, Crawford-Snyder, Yin, Hicks, and Gossett assert claims of "discrimination." [Doc. 43 at ¶¶ 49, 58, 69, 79, 88.]  It is undisputed that only Gossett has filed a charge of discrimination with the Tennessee Human Rights Commission ("THRC") and Bi-Lo has not moved to dismiss Gossett's discrimination claim.[1]  Bi-Lo has moved to dismiss the discrimination claims of Tackett, Crawford-Snyder, Yin, and Hicks on the grounds that these plaintiffs have not exhausted their administrative remedies by filing a charge of discrimination with either the THRC or the Equal Employment Opportunity Commission ("EEOC").  Bi-Lo also argues that these plaintiffs fail to allege sufficient facts to support a claim under either Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, or the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.*, because the Second Amended Complaint fails to identify discrimination based on any protected category.

It is undisputed that a plaintiff intending to assert a claim of discrimination pursuant to Title VII must first exhaust her administrative remedies.  42 U.S.C. § 2000e-5; *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972); *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991).  Accordingly, to the extent that plaintiffs Tackett, Crawford-Snyder, Yin, and

_____

[1]A notice of administrative closure of Gossett's charge is attached to the Second Amended Complaint [Doc. 43] as Exhibit H.

6

Hicks intend to assert claims of discrimination under Title VII, those claims will be dismissed for lack of subject matter jurisdiction.

It is unclear whether plaintiff Gossett's discrimination claim is asserted under Title VII or the THRA. However, because Bi-Lo has not moved to dismiss plaintiff Gossett's claim, to the extent that plaintiff Gossett intends to assert a claim under Title VII, the Court has subject matter jurisdiction over that claim.

These plaintiffs assert that they may nevertheless proceed with a "direct action" pursuant to the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq*., without first filing an administrative complaint. The plaintiffs specifically rely on Tenn. Code Ann. § 4-21-311(a) which provides that "[a]ny person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in chancery or circuit court." Thus, because they could have filed their discrimination claims in state court and such claims could be removed to this Court on the basis of diversity jurisdiction, these plaintiffs contend that they can also file a direct action in this Court.

Bi-Lo points out that the express language of Tenn. Code Ann. § 4-21-311(a) only allows for a direct action to be filed "in chancery or circuit court" and does not allow for a direct action in federal court. The Court notes that Bi-Lo does not cite any authority for the proposition that section 4-21-311(a) means exactly what it says and no more. Likewise, plaintiffs do not cite any authority for the proposition that the phrase "in chancery or circuit court" also includes federal court. The Court has found no cases, state or federal, which have

7

addressed this issue. Thus, the Court is faced with an issue of first impression on a question of interpretation of Tennessee law without guidance from any Tennessee courts.

It is worth noting that the Court's jurisdiction over this case is based on the diversity of the parties;[2] all of the claims asserted are state law claims, with the possible exception of plaintiff Gossett's claims for discrimination and retaliation, discussed *infra*. The parties do not dispute that the plaintiffs could have brought a direct action under the THRA in state court and, assuming that this Court otherwise had jurisdiction, upon removal such claims would properly be before the Court. Nor does this case present the well settled issue that the Court could exercise pendent jurisdiction over the THRA claims if federal claims were also pending. *See Cripps v. United Biscuit of Great Britain*, 723 F. Supp. 844, 848 (E.D. Tenn. 1989).

As noted previously, Tenn. Code Ann. § 4-21-311(a) provides: "[a]ny person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in chancery court or circuit court." Further, section 4-21-311(d) provides in part that "[a] civil cause of action under this section shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice ceases ... ." Thus, the question is whether

---

[2]The parties have treated this case as one based on diversity jurisdiction to the extent that the jurisdictional basis of plaintiffs' claims can be ascertained. Although the Second Amended Complaint asserts that jurisdiction is based on 28 U.S.C. § 1331, federal question, there is no federal question set forth in the complaint nor have the plaintiffs indicated an intent to pursue a federal claim of any kind in response to Bi-Lo's motion to dismiss. Moreover, the plaintiffs voluntarily dismissed the individual defendants to preserve the diversity of the parties.

this Court, sitting in diversity, can have subject matter jurisdiction over a state law claim where the state statute does not explicitly so provide.

After considering the plain language of the statute, the Court is constrained to agree with Bi-Lo. Tenn. Code Ann. § 4-21-311(a) provides that a direct action may be filed in "chancery court or circuit court." This Court will not read into the statute language which was not included by the Tennessee legislature. Accordingly, because Tenn. Code Ann. § 4-21-311(a) does not specifically provide that a direct action may be filed in federal court and because such a claim is not based on pendent jurisdiction, the Court will dismiss the discrimination claims under the THRA of plaintiffs Tackett, Crawford-Snyder, Yin, and Hicks. The Court will not dismiss plaintiff Gossett's THRA claim, to the extent she has asserted one, because such a claim would be pendent to Gossett's Title VII claim, to the extent she has asserted one and because Bi-Lo has not moved to dismiss Gossett's THRA claim. 28 U.S.C. § 1367.

C. Retaliation

All of the plaintiffs have asserted claims of retaliation. Bi-Lo argues that the plaintiffs, with the exception of Gossett, have failed to plead a prima facie case of retaliation under either the THRA or Title VII. In their written response, the plaintiffs rely on the principle of notice pleading and assert that they have pled sufficient facts to allow this claim to go forward. During oral argument, plaintiffs' counsel stated that he intended the retaliation claims to be whistle-blower claims under the Tennessee common law. Out of an

abundance of caution, the Court will address whether the plaintiffs can proceed under either avenue.

It is undisputed that none of the plaintiffs, except for Gossett, has filed a charge of discrimination. Those plaintiffs therefore have not exhausted their administrative remedies as to a retaliation claim under Title VII. 42 U.S.C. § 2000e-5; *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972); *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991). Accordingly, to the extent that plaintiffs Weathers, Majure, Mullinix, Akers, Tackett, Crawford-Snyder, Yin, Hicks, and Presnell intend to assert claims of retaliation under Title VII, those claims will be dismissed for lack of subject matter jurisdiction. The Court will not dismiss Gossett's claim of retaliation under Title VII to the extent she intends to assert one for the reasons set forth above.

To the extent that these plaintiffs intend to assert claims of retaliation under the THRA, the THRA "prohibits employers from retaliating against an employee who 'has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding, or hearing." Tenn. Code Ann. § 4-21-301(1). However, as discussed above, Tenn. Code Ann. § 4-21-311(a) provides that a direct action may be filed in "chancery court or circuit court" and does not specifically provide that such an action may be filed in federal court. Because such a claim is not based on pendent jurisdiction, the Court will dismiss the retaliation claims under the THRA of plaintiffs Weathers, Majure, Mullinix, Akers, Tackett, Crawford-Snyder, Yin, Hicks and Presnell. The Court will not dismiss

10

Gossett's claim of retaliation under the THRA to the extent she intends to assert one for the reasons set forth above.

Neither party has briefed the question of whether plaintiffs' allegations of retaliation can state a claim for whistleblower protection under the Tennessee common law. In order to establish a prima facie case of common law retaliatory discharge, a plaintiff must prove the following elements:

> (1) that an employment-at-will relationship existed;
> (2) that the employee was discharged;
> (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and
> (4) that *a substantial factor* in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

*Crews v. Buckman Laboratories Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002) (emphasis added).

Taking the allegations of the complaint as true, plaintiffs Majure, Mullinix, Akers, Tackett, Crawford-Snyder, Yin, and Presnell allege that they are presently employed by Bi-Lo [Doc. 43 at ¶¶ 23, 31, 39, 48, 68, 78, 97]. Therefore, they cannot meet the second element of a prima facie case of retaliatory discharge.

In any event, none of these plaintiffs identifies a "clear violation of some well-defined and established public policy." *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 556-57 (Tenn. 1988) ("The [retaliatory discharge] action is not available to every disappointed or disgruntled employee or officer."). There are simply insufficient allegations in the second

11

amended complaint which could reasonably be interpreted to put the defendant on notice that claims of retaliatory discharge were being asserted.[3] *See* Fed. R. Civ. P. 8(a); *Chism*, 762 S.W.2d at 557 ("Mere generalizations and conclusions, however, will not suffice when a pleading is challenged by a Rule 12 or Rule 56 motion."). Accordingly, the whistleblower retaliation claims of plaintiffs Weathers, Majure, Mullinix, Akers, Tackett, Gossett, Crawford-Snyder, Yin, Hicks, and Presnell will be dismissed.

D.    Malicious Harassment

All of the plaintiffs have asserted claims of malicious harassment under the THRA, Tenn. Code Ann. § 4-21-701. Bi-Lo has moved to dismiss these claims on the basis that the plaintiffs cannot state a claim for malicious harassment because they fail to identify how they have been subject to fear, intimidation, harassment, or bodily injury due to their race, color, ancestry, religion, or national origin. *See Washington v. Robertson County*, 29 S.W.3d 466, 471 (Tenn. 2000). At oral argument, plaintiffs' counsel conceded that Bi-Lo is correct with respect to most of these plaintiffs. However, he argued that the malicious harassment claims of plaintiffs Weathers, Mullinix, and Yin should be able to proceed.

For the reasons set forth above, however, Tenn. Code Ann. § 4-21-311(a) provides that a direct action under the THRA may be filed in "chancery court or circuit court" and does not specifically provide that such an action may be filed in federal court. Because such

---

[3]The sole allegation with respect to each plaintiff asserting a retaliation claim is "[t]he aforementioned actions taken by Defendants constitutes retaliation because this Plaintiff intended to (and did) file a Complaint and/or participated in an investigation with the purpose of exposing the Defendants and the Defendants actions." [Doc. 43 at ¶¶ 19, 28, 36, 44, 53, 73, 83, 92.]

a claim is not based on pendent jurisdiction, the Court will dismiss the malicious harassment claims of all of the plaintiffs.

E.    Defamation

All of the plaintiffs assert claims for defamation. Bi-Lo argues that the plaintiffs fail to state a valid claim for defamation because the Second Amended Complaint does not contain sufficient facts for either an oral or written claim of defamation. Alternatively, Bi-Lo argues that these claims are barred by the six-month statute of limitations. Finally, Bi-Lo contends that plaintiff Presnell's claim for defamation is barred by the exclusivity provisions of the Tennessee Workers' Compensation laws because he has a pending workers' compensation claim for psychological injuries. Plaintiffs respond that they have satisfied the notice pleading requirements for such claims and that their claims are timely filed. Plaintiff Presnell suggests that he has not yet received any workers' compensation benefits and that, alternatively, his claims should be stayed pending resolution of his workers' compensation claim.

To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). The statute of limitations for a claim of oral defamation, or slander, is six months from when the statement is made. Tenn. Code Ann. §

28-3-103 ("Actions for slanderous words spoken shall be commenced within six (6) months after the words are uttered.").

Addressing first the statute of limitations issue, this case was initially filed August 18, 2004. Thus, any allegedly defamatory statements made prior to February 18, 2004, are time-barred. In the Second Amended Complaint, plaintiff Weathers alleges defamatory statements made at the end of March 2004, May 15, 2004, June 17, 2004, and an e-mail received on September 1, 2004 [Doc. 43 at ¶ 16]. Plaintiff Weathers' claim of defamation was therefore filed within the six month statute of limitations.

Plaintiff Majure alleges defamatory statements made in December 2003, April 2003, October 2003, January 2004, October 29, 2004, and March 8, 2004 [Doc. 43 at ¶ 25]. Thus, to the extent that plaintiff Majure's defamation claim relies on statements from December 2003, April 2003, October 2003, and January 2004, those claims are time-barred and will be dismissed. The remaining allegations were filed within the limitations period.

Plaintiff Mullinix alleges defamatory statements made on February 8, 2004 and continuing until February 29, 2004, March 17, 2004, April 8, 2004, June 9, 2004, June 23, 2004, July 6, 2004, August 12, 2004 [Doc. 43 at ¶ 33]. To the extent that plaintiff Mullinix's defamation claim relies on statements prior to February 18, 2004, those claims are time-barred and will be dismissed. The remaining claims were filed within the limitations period.

Plaintiff Akers alleges defamatory statements made in January 2003, between March 2003 and July 2003, and August 2003 [Doc. 43 at ¶ 41]. Thus, plaintiff Akers' defamation claim is time-barred and will be dismissed.

14

Plaintiff Tackett alleges defamatory statements made in January 2004, and in 1998 [Doc. 43 at ¶ 50]. Plaintiff Tackett's defamation claim is likewise time-barred and will be dismissed.

Plaintiff Gossett alleges defamatory statements made on April 19, 2004, May 6, 2004, and September 2, 2004 [Doc. 43 at ¶ 59]. These statements were also made within the six-month limitations period and are therefore timely.

Plaintiff Crawford-Snyder alleges defamatory statements made between August 23, 2004 and August 28, 2004, August 31, 2004, and the week of August 16, 2004 [Doc. 43 at ¶ 70]. These statements were made within the six-month limitations period and are therefore timely.

Plaintiff Yin appears to allege only one undated defamatory statement that she could "kill a rock." [Doc. 43 at ¶ 80(C).] Inasmuch as the date of this statement is not identified, even after two amendments to the complaint, the Court cannot assess whether Yin's defamation claim was timely filed or not.

Plaintiff Hicks alleges defamatory statements made in June 2002, May 2004, and July 2004 [Doc. 43 at ¶ 89]. To the extent that plaintiff Hicks' defamation claim relies on statements made in June 2002, such statements are time-barred and will be dismissed. The remaining alleged statements are timely.

Plaintiff Presnell alleges defamatory statements made in September or October 2003, November 2003, and March 2004 [Doc. 43 at ¶ 100]. To the extent that plaintiff Presnell's

15

defamation claim relies on statements made in 2003, such statements are time-barred and will be dismissed. The remaining alleged statements are timely.

With respect to Bi-Lo's argument that the plaintiffs' allegations lack specificity, the Court notes that the Second Amended Complaint is unclear as to the content of many of the defamatory statements and whether the persons making the alleged statements are Bi-Lo employees or not. The Court further cannot determine whether such statements were made with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. Although the Court has serious reservations as to whether the remaining defamation claims can survive a dispositive motion or a motion for directed verdict, such a determination simply cannot be made on the present record. Accordingly, Bi-Lo's motion to dismiss the defamation claims will be granted in part and denied in part.

E.    Assault

Plaintiffs Gossett and Crawford-Snyder assert claims of assault. Gossett alleges that on one occasion in October or November 2003, Bobby Michel grabbed her between the legs. [Doc. 43 at ¶ 59(C).] Crawford-Snyder alleges that on or about September 4, 2004, Rita Wilson threw two boxes of cookie dough at her. [*Id*. at ¶ 70(E).] Bi-Lo argues that the plaintiffs fail to plead sufficient facts to state a claim for assault. Further, Bi-Lo argues that it, as the plaintiffs' employer, cannot be liable for assault as opposed to the individuals who committed the alleged assaults. Plaintiffs argue that they have alleged sufficient facts to satisfy the requirements of notice pleading. Plaintiffs also argue that the acts of Bi-Lo's employees were foreseeable and therefore Bi-Lo can be held liable for the alleged assaults.

16

An assault is "an attempt, or the unequivocal appearance of an attempt, to do a corporal injury to another, the intent to do harm being essential." *Alexander v. Beale Street Blues Co.*, 108 F. Supp.2d 934, 945-46 (W.D. Tenn. 1999) (quoting *Rushing v. State*, 268 S.W.2d 563, 567 (Tenn. 1954)). The Court first observes that the Second Amended Complaint is silent as to who Bobby Michel and Rita Wilson are, although the Court assumes for the purposes of this motion that Michel and Wilson are employees of Bi-Lo.

In Tennessee, an employer is responsible for the torts committed by its employee acting within the scope of his employment. *Insurance Co. of North Am. v. Federated Mut. Ins. Co.*, 518 F.2d 101, 103 (6th Cir. 1975); *Tennessee Farmers Mut. v. American Mut.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992). In order to hold an employer liable, the plaintiff must prove (1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred. *Tennessee Farmers Mut.*, 840 S.W.2d at 937.

In assessing whether an employee's conduct is within the scope of his or her employment, the Court is instructed to consider the factors set forth in the Restatement (Second) of Agency § 228:

> (1) Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master; and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

17

*Id*. at 938.  In addition, Restatement (Second) of Agency § 229 provides:

> (1) To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.
>
> (2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
>
> (a) whether or not the act is one commonly done by such servants;
>
> (b) the time, place and purpose of the act;
>
> (c) the previous relations between the master and the servant;
>
> (d) the extent to which the business of the master is apportioned between different servants:
>
> (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
>
> (f) whether or not the master has reason to expect that such an act will be done;
>
> (g) the similarity in quality of the act done to the act authorized;
>
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
>
> (i) the extent of departure from the normal method of accomplishing an authorized result; and
>
> (j) whether or not the act is seriously criminal.

*Id*.

Neither party has addressed these factors nor provided any evidence to allow the Court to conduct such an analysis.  Thus, the Court is presented with the bare allegation by Gossett that Bobby Michel grabbed her between the legs and Crawford-Snyder's bare allegation that Rita Wilson threw two boxes of cookie dough at her.  Taking those allegations as true for the purposes of a motion to dismiss, the Court is simply unable to conclude on the present record that these facts are insufficient to state a claim.  Accordingly, Bi-Lo's motion to dismiss the assault claims will be denied.

18

F.     Forgery

Plaintiff Hicks asserts a claim for forgery regarding a performance evaluation that was signed by someone other than herself [Doc. 43 at ¶ 89(E)]. Bi-Lo moved to dismiss this claim on the grounds that there is no civil action for forgery in Tennessee. At oral argument, plaintiffs' counsel agreed that this allegation was not intended to state a separate cause of action, but rather was offered as factual support of the other claims asserted. Accordingly, to the extent that the second amended complaint can be read to assert a claim for forgery by plaintiff Hicks, that claim will be dismissed.

G.     Intentional Infliction of Emotional Distress

Construing the complaint liberally, all of the plaintiffs assert a claim for intentional infliction of emotional distress.[4] Bi-Lo argues that these claims should be dismissed because the conduct alleged, even if true, does not rise to the level of outrageous conduct. Plaintiffs contend that the acts alleged in the Second Amended Complaint are beyond all bounds of decency and should not be tolerated by a civilized society.

The three elements of a claim for outrageous conduct or intentional infliction of emotional distress in Tennessee are as follows: (1) the conduct complained of must be

---

[4]For most of the plaintiffs, intentional infliction of emotional distress is listed as one of the causes of action identified at the beginning of that plaintiff's section of the Second Amended Complaint. However, intentional infliction of emotional distress is not listed at the beginning of the sections for plaintiffs Tackett, Crawford-Snyder, Yin, and Hicks. Nevertheless, all of the plaintiffs allege that "[t]he Defendants conduct was intentional, reckless and so outrageous that it should not be tolerated by civilized society. Because of Defendants [sic] conduct, this Plaintiff suffered serious mental injury." Therefore, the Court will construe the Second Amended Complaint as asserting an intentional infliction of emotional distress claim on behalf of each plaintiff.

19

intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury. *Miller v. Willbanks*, 8 S.W.3d 607, 612 (Tenn. 1999) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). In assessing whether particular conduct is so intolerable as to be tortious, the Tennessee Supreme Court has adopted the following standard:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Bain*, 936 S.W.2d at 623.

Bi-Lo contends that the plaintiffs complain about alleged damage to their reputations, unfair treatment based upon some alleged discriminatory action, and, at worst, assault. Thus, Bi-Lo argues that the conduct, even if true, does not rise to the level of outrageous conduct. While the Court has serious reservations about these claims, the Court cannot conclude, on reviewing a motion to dismiss, that the plaintiffs can prove no set of facts that would entitle them to relief. Accordingly, Bi-Lo's motion to dismiss the intentional infliction of emotional distress claims will be denied at this juncture.

20

H.     Conspiracy and "Aiding and Abetting"

As pointed out by Bi-Lo, each plaintiff alleges that the actions of the defendant "were done as a conspiracy and with the intent of aiding and abetting because each Defendant knew that his companion's conduct constituted a breach of duty and substantial assistance and/or encouragement was given." At oral argument, plaintiffs' counsel agreed that these claims should not be included in this action. Accordingly, to the extent that the Second Amended Complaint asserts claims of conspiracy and aiding and abetting, those claims will be dismissed.

I.     Conclusion

As set forth above, the defendant's motion to dismiss will be granted in part and denied in part as follows: the federal discrimination claims of Tackett, Crawford-Snyder, Yin, and Hicks will be dismissed; the THRA discrimination claims of Tackett, Crawford-Snyder, Yin, and Hicks will be dismissed; the federal retaliation claims of Weathers, Majure, Mullinix, Akers, Tackett, Crawford-Snyder, Yin, Hicks, and Presnell will be dismissed; the THRA retaliation claims of Weathers, Majure, Mullinix, Akers, Tackett, Crawford-Snyder, Yin, Hicks, and Presnell will be dismissed; the malicious harassment claims of all plaintiffs will be dismissed; the defamation claims of Majure, Mullinix, Hicks, Akers, Tackett, and Presnell will dismissed to the extent they are time-barred; the forgery claim of Hicks will be dismissed; the conspiracy and "aiding and abetting" claims of all plaintiffs will be dismissed. The following claims will remain and proceed to trial: Gossett's federal and state claims of discrimination and retaliation; the defamation claims of Weathers, Majure, Mullinix, Gossett,

21

Crawford-Snyder, Yin, Hicks, and Presnell; the assault claims of Gossett and Crawford-Snyder; the intentional infliction of emotion distress claims of all plaintiffs; the breach of contract claim of Weathers; and the misrepresentation claims of Akers and Hicks.

## III.    Motion to Sever

Bi-Lo has moved, pursuant to Fed. R. Civ. P. 21 and 42(b), to sever the plaintiffs' claims on the grounds that they do not arise from the same series of transactions or occurrences, they do not share common questions of fact or law, and the risk of undue prejudice and irreparable harm to Bi-Lo and confusion of the trier of fact requires severance. The plaintiffs argue that their claims should not be severed because they are all current or former employees of Bi-Lo and they have suffered the alleged acts committed by Bi-Lo management.

Rule 21 provides in part that "[a]ny claim against a party may be severed and proceeded with separately." Fed. R. Civ. P. 21. Rule 42(b) states that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues ... ." Fed. R. Civ. P. 42(b).

Although Fed. R. Civ. P. 20 allows for the permissive joinder of parties, such joinder is appropriate only if the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will

arise in the action." Thus, permissive joinder is limited by the requirements of a common question and transactional relatedness. *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 231 (M.D. Tenn. 2001). The transactional test requires that "parties must assert rights, or have rights asserted against them, that arise from related activities – a transaction or an occurrence or a series thereof." *Id*. This test requires a case by case analysis. *Id*.

Considering the remaining claims after the rulings above on the motion to dismiss, the present case involves ten plaintiffs who assert claims of breach of contract, misrepresentation, discrimination, retaliation, defamation, assault, and intentional infliction of emotional distress. Some plaintiffs are former employees of Bi-Lo while others are presently employed by Bi-Lo. It is not apparent from the Second Amended Complaint whether the plaintiffs worked at the same Bi-Lo store or not. There appears to be some repetition of the alleged "bad actors" in the Second Amended Complaint, although it does not appear that the same Bi-Lo officials committed all of the alleged acts against all of the plaintiffs. Thus, while there may be some common questions of fact and law, the Court does not find that there is commonality as to all of the plaintiffs and all of the claims. Moreover, the Court cannot find that the plaintiffs have asserted rights that arise from the same series of transactions or occurrences. Instead, the plaintiffs appear to be asserting a variety of individual claims that arose during or subsequent to each plaintiff's employment with Bi-Lo over several years. The Court further finds that it would be unwieldy as a practical matter and prejudicial to Bi-Lo to try all of these claims together to a jury. Therefore, the Court agrees with Bi-Lo that the plaintiff's claims should be severed for purposes of trial. The

Court will not, at this time, sever the claims for purposes of discovery based on the representations of counsel that joint discovery as to some or all of the claims would be feasible and more economical.

Bi-Lo's motion to sever will be granted and the plaintiffs' claims will be severed for purposes of trial such that each plaintiff will proceed to trial separately.

Order accordingly.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE